1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  ALISON N. TERRY, | CASE NO. 06-CV-1459 MMA (CAB) |
| 12                                    Plaintiff, | **ORDER PURSUANT TO FED. R. CIV. P. 16(d)** |
| 13        vs. | |
| 14  CITY OF SAN DIEGO, et al., | [Doc. Nos. 130, 133] |
| 15                                    Defendants. | |

16

17        On April 4, 2011, the Court held a Final Pretrial Conference ("Conference").  Appearances

18  were made by Plaintiff Terry's counsel, Michael Conger and Defendant City of San Diego's

19  ("Defendant" or "City") counsel, Joe Cordileone.  Pursuant to Federal Rule of Civil Procedure

20  16(d), the Court issues this order to recite the actions taken at the Conference, and resolve

21  outstanding issues in preparation for trial.

22  **I.  TRIAL DATE RESET**

23        The trial date set for June 1, 2011 is **VACATED**, and **RESET** for ***October 26, 2011*** at

24  ***9:00 a.m.*** in Courtroom 5.  The parties are directed to contact the chambers of Magistrate Judge

25  Bencivengo to schedule a settlement conference.

26

27

28  / / /

1  **II.  DEFENDANT'S MOTION IN LIMINE TO "PRECLUDE PLAINTIFF FROM PRESENTING**

2  **EVIDENCE OF [] DISPARATE IMPACT CLAIM[S] UNLESS SHE DEMONSTRATES THAT SHE HAS**

3  **STANDING TO BRING SUCH [] CLAIM[S]."** [Doc. No. 133]

4  **(A)  Background**

5       Defendant seeks to preclude Plaintiff from presenting evidence in support of her disparate

6  impact claims on grounds that Plaintiff lacks standing.  Defendant contends the average female

7  Life Guard I ("LG1") received an "Outstanding" or "Commendation" ("O/C") rating 9% percent

8  of the time, while the average male received an O/C rating 23.8% of the time.  Defendant argues

9  Plaintiff received an O/C rating 80% of the time, more than three times as often as the average

10  male LG1, and therefore was not disadvantaged.  Defendant further contends Plaintiff voluntarily

11  resigned from her position with the lifeguard service, and cannot establish redressibility.

12       Plaintiff responds she has standing to bring her disparate impact claims because pecuniary

13  injury is a sufficient basis for standing.  She contends that if she demonstrates liability on a

14  disparate impact theory she is entitled to back pay and front pay.  Plaintiff contends redressibility

15  is available because in addition to back pay and front pay, the Court may order injunctive relief to

16  remedy the alleged discriminatory effects of the City's lifeguard service promotional practices.

17       At the February 28, 2011 motion in limine hearing, the Court tentatively granted

18  Defendant's motion to the extent Defendant sought to preclude evidence supporting a disparate

19  impact theory, but denied Defendant's motion to the extent the motion challenged standing.  The

20  Court tentatively found that although Plaintiff initially had standing to bring the claim, the claim

21  had been rendered moot. [Doc. No. 180.]  If Plaintiff's employee performance ratings ("EPRs")

22  were above average, it was indiscernible to the Court how she would be injured by the lifeguard

23  service's use of EPRs in its hiring procedure.  The Court's mootness concerns also rested on

24  Plaintiff's ability to establish redressibility.  *See Robinson v. Metro-North Commuter R.R. Co.*, 267

25  F.3d 147, 162 (2d. Cir. 2001) (for an employee to "obtain individual relief (e.g., back or front pay)

26  . . . [the employee] must show that he or she was among those adversely affected by the challenged

27  policy or practice."); *see generally, Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033,

28  1036 (9th Cir. 2006) (plaintiff not likely to be redressed for injunctive relief because she "is no

1   longer an employee of the Department" and "there is no indication in the complaint that [she] has

2   any interest in returning to work" for the defendant.).  At the request of the Court, the parties filed

3   supplemental briefs on the issue of whether Plaintiff's disparate impact claims are moot.

4           **(B)  Discussion**

5           "While standing is concerned with who is a proper party to litigate a particular matter, the

6   doctrines of mootness and ripeness determine when that litigation may occur. Mootness has been

7   described as the doctrine of standing set in a time frame: the requisite personal interest that must

8   exist at the commencement of litigation (standing) must continue throughout its existence

9   (mootness)." *Hawaii County Green Party v. Clinton*, 14 F. Supp. 2d 1198, 1201 (D. Hawai'i.

10  1998), *citing United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (internal

11  quotation omitted).  "A moot action is one where the issues are no longer 'live' or the parties lack

12  a cognizable interest in the outcome." *Id*, *quoting Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per

13  curiam).

14          Plaintiff has demonstrated her disparate impact claims are not moot.  Plaintiff clarified her

15  position that even if Plaintiff received the best evaluation ratings "80 percent of the time," the

16  City's lifeguard service utilizes only the most recent three consecutive year ratings when deciding

17  Lifeguard II promotions. [Doc. No. 164 at 3; Doc. No. 184 at 10.]  Plaintiff intends to demonstrate

18  she did not receive the highest ratings in all three years before she applied for promotion to

19  Lifeguard II, and therefore the City's use of EPRs in the promotional process dramatically reduced

20  or injured her chances of promotion.  Plaintiff sufficiently establishes her claims that she suffered

21  injury are not moot.[1]

22          Plaintiff has further demonstrated she may be entitled to redressibility under her disparate

23  impact claims.  Under both Title VII and FEHA, an employee may obtain back pay where he or

24  she establishes a disparate impact violation.  42 U.S.C. § 2000e-5(g); Cal. Gov. Code §§ 12965;

25  12970; *Lutz v. Glendale Union High School*, 403 F3d 1061, 1069 (9th Cir. 2005).  The Court's

26

27          [1]Plaintiff also makes the salient point that she asserts an alternative theory of disparate impact liability by
    challenging the entire subjective criteria for promotion to Lifeguard II are incapable of separation for analysis. (Pl.'s
    Reply at 5.)  As Plaintiff has established injury for the reasons stated above, the Court does not expound upon her
28  alternative theory.

1  concern that Plaintiff could no longer establish redressibility was based in part on grounds that if

2  she was not among those adversely affected, she would not be able to obtain relief.  *See, Robinson,*

3  267 F.3d at 162.  As Plaintiff has shown she may be among those adversely affected by the City's

4  use of EPRs in the promotional process, she also has established her claims are capable of redress.[2]

5  Accordingly, the Court **DENIES** Defendant's motion in limine to preclude Plaintiff from

6  presenting evidence of disparate impact claims. [Doc. No. 133.]

7  **III.  DEFENDANT'S MOTION TO BIFURCATE PLAINTIFF'S CLAIM[S] OF DISPARATE IMPACT**

8  **FROM HER CLAIMS OF DISPARATE TREATMENT AND RETALIATION**  [Doc. No. 130].

9          **(A) Background**

10          Defendant contends it will be prejudiced if Plaintiff's disparate impact claims are not heard

11  separately from her disparate treatment and retaliation claims because issues of juror confusion

12  may arise due to the different elements that need to be proven for each claim.  Defendant also

13  contends jurors may be confused by the statistical evidence Plaintiff plans to offer in support of

14  her disparate impact claims.  Additionally, Defendant contends Plaintiff is only entitled to a jury

15  trial for her disparate treatment claims, and not her disparate impact claims.

16          On February 28, 2011, the Court deferred ruling on Defendant's motion to bifurcate

17  proceedings until the Court had rendered a decision on whether Plaintiff's disparate impact claims

18  are moot.  The proposed pretrial order indicated the parties agreed the trial should not be

19  bifurcated.  The Court tentatively denied as moot Defendant's motion to bifurcate proceedings.  At

20  the Conference, Defendant respectfully requested that if the Court determined Plaintiff's disparate

21  claims are not moot, the Court consider Defendant's motion to bifurcate proceedings.  As

22  Plaintiff's disparate impact claims are not moot, the Court addresses Defendant's motion to

23  bifurcate proceedings.

24          **(B)  Discussion**

25          "For convenience, to avoid prejudice, or to expedite and economize, the court may order a

26  _____

27          [2]Plaintiff makes additional arguments that other forms of relief are also available for her disparate impact
        claims.  *See Pl.'s Mem. P.&.A.* at 10-12 (discussing front pay and injunctive relief in form of reinstatement.)   The

28  Court does not recite them here, as Plaintiff has shown a form of redressibility is available to her sufficient to
        demonstrate her claims are not moot.

1  separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party

2  claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."

3  FED. R. CIV. P. 42(b).  The decision whether to bifurcate proceedings is within a court's sound

4  discretion.  *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).

5  Rule 42(b) allows, but does not require, bifurcation to further convenience or avoid prejudice.  *See*

6  *id.*; *see also* FED. R. CIV. P. 42 Advisory Committee's Note ("[S]eparation of issues for trial is not

7  to be routinely ordered").

8      The Court does not find sufficient reason to bifurcate the trial.  The testimony of Plaintiff's

9  statistical expert is potentially pertinent to both the disparate treatment and disparate impact

10  claims.  *See Ninth Cir. Mandate*, Doc. No. 121 at 5 (district court erred in disregarding statistical

11  expert's conclusions in connection with Plaintiff's disparate treatment claim).  Plaintiff does not

12  have a federal right to a jury trial for her Title VII disparate impact claim.  42 U.S.C. §1981a(b)(2),

13  (c); *see Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 423 (5th Cir. 1998).  However, Plaintiff is

14  entitled to a jury trial on her FEHA disparate impact claim because in her original complaint, she

15  expressly demanded it in accordance with state law.  *See* FED. R. CIV. P. 81(c)(3) ("A party who,

16  before removal, expressly demanded a jury trial in accordance with state law need not renew the

17  demand after removal"); *see Turman v. Turning Point of Central California*, 191 Cal. App. 4th 53,

18  61-62 (2010) (trial court appropriately instructed jury on disparate impact claim).  Therefore, the

19  jury will consider evidence as to Plaintiff's FEHA disparate impact claim. No judicial economy is

20  achieved by requiring witnesses to testify twice.  Any risk of jury confusion can be mitigated with

21  proper instructions and verdict sheets.  *See S.E.C. v. Leslie*, 2010 WL 2991038 *5 (N.D. Cal. July

22  29, 2010) ("[c]areful jury instructions should be effective to ensure that the jury can separate out

23  the two sets of allegations and the alleged conduct that is relevant to each").

24      Accordingly, the Court exercises its discretion and declines to bifurcate the proceedings.

25  Both claims will be tried at the same time.  The jury will decide the disparate treatment claims and

26  FEHA disparate impact claim, and the Court will decide the Title VII disparate impact claim.  *See*

27  *Williams v. Boeing Co.*, 225 F.R.D. 626, 640 (W.D. Wash. 2005).  The Court will not make any

28  factual findings on the Title VII disparate impact claim until the jury has made its findings on the

1  disparate treatment claims and FEHA disparate impact claim.  For any overlapping factual issues,

2  the Court shall adhere to the jury's findings.  *See id; see also Allison v. Citgo Petroleum Corp.*,

3  151 F.3d at 423.  Accordingly, the Court **DENIES** Defendant's motion to bifurcate Plaintiff's

4  claims of disparate impact from her claims of disparate treatment and retaliation.  [Doc. No. 130.]

5      **IV.  PLAINTIFF'S OFFER OF PROOF REGARDING ADDITIONAL PATTERN AND PRACTICE**

6  **EVIDENCE AND ITS NEXUS TO HER DISPARATE TREATMENT CLAIMS**.

7      On April 21, 2008, the Court instructed Plaintiff to serve an offer of proof regarding the

8  pattern and practice evidence she intends to present in support of her disparate treatment claims.

9  The record indicates the deadline to file the proof was vacated; thus Plaintiff did not file an offer

10  of proof.  [Doc. No. 68 ("Plaintiff shall serve . . . an offer of proof no later than the date required

11  for filing the amended proposed pretrial order . . . ."); Doc. No. 88 (case transferred; pretrial dates

12  vacated).]  In March 2011, the Court set a briefing schedule for Plaintiff to file her offer of proof,

13  and for Defendant to file its objections.  On March 23, 2011, Plaintiff submitted her additional

14  offer of proof, to which Defendant objected.  [Doc. Nos. 185, 187.]  The Court issued tentative

15  rulings as to the offer of proof.  At the Conference, Defendant requested the Court modify its

16  language in these rulings to reflect that Plaintiff may introduce pattern and practice *evidence*, as

17  opposed to a pattern and practice *theory*, for an individual disparate treatment claim.  Defendant's

18  request is well taken, and the Court modifies its rulings.  The Court hereby **AFFIRMS** each of its

19  tentative rulings regarding Defendant's objections to Plaintiff's offer of proof regarding pattern

20  and practice evidence in support of her disparate treatment claims.  Where pertinent, the Court

21  provides additional information in response to the parties' arguments raised at the conference.

22      (a)  Defendant's objections to Plaintiff's additional proffered evidence number 1 (*see* Doc.

23  No. 185 at 3) is **OVERRULED** on grounds that under controlling case precedent, Plaintiff is not

24  required to establish that the same supervisor was involved in other alleged instances of

25  discrimination for this evidence to be deemed relevant and admissible.  *Obrey v. Johnson*, 400

26  F.3d 691, 99 (9th Cir. 2005).

27      (b) Defendant's objections to Plaintiff's additional proffered evidence number 2 (*see* id at

28  3) is **OVERRULED** on grounds that under controlling case precedent, Plaintiff also is not

1  required to establish that the same supervisor was involved in other alleged instances of

2  discrimination for this evidence to be deemed relevant and admissible. *Obrey*, 400 F.3d at 99.

3        (c) Defendant's objection to Plaintiff's additional proffered evidence number 3 (*see* id at 4)

4  is **SUSTAINED**.  Plaintiff contends this evidence is relevant to demonstrate "deselection" from

5  the applicant pool to explain why a larger percentage of the female LG1 population did not apply

6  for promotion.  This evidence is too attenuated from Plaintiff's disparate treatment claim that she

7  applied for, and was denied, a promotion due to discriminatory animus in the factors considered

8  when determining whether to promote a person who has applied.  FED. R. EVID. 403; *Obrey*, 400

9  F.3d at 699.  This proffered evidence relates to establishing that females were discouraged from

10  applying in the first instance, and does not suggest the factors taken into consideration for persons

11  who actually applied for promotion, are themselves infected with discriminatory animus.

12        (d)  Defendant's objection to Plaintiff's additional proffered evidence number 4 (*see* id at

13  4) is **SUSTAINED** on grounds as to "being asked out on dates."  At the conference, Plaintiff

14  stated that an inadvertent error was made by omitting the word "about" in its fifth example under

15  this item of evidence.  Thus, the proffered evidence should have stated, "Female lifeguards have

16  experienced sexual harassment such as "being subjected to sexual comments [about] public

17  patrons of the beach," which the Court finds relevant and may be admissible to Plaintiff's claim.

18  As to the other instances under this offer of proof, the Court advises Plaintiff they may only be

19  relevant if the alleged instances were committed by persons who had decision-making power to

20  promote or discharge employees, or to refuse to hire applicants.

21        (e) Defendant's objection to Plaintiff's additional proffered evidence number 5 (*see* id) is

22  **OVERRULED**.  This proffered evidence is unnecessary, as the Court had already reviewed

23  declarations by female lifeguards that included statements recounting instances of retaliation,

24  which the Court held may be relevant and admissible.

25        (f) Defendant's objection to Plaintiff's additional offer of proof number 6 (see id), which

26  amounts to argument rather than evidence, is **OVERRULED**.

27

28  ///

1 **V.  MODIFICATIONS TO THE PARTIES' PROPOSED PRETRIAL ORDER**

2        Pursuant to Local Civil Rule 16.1.6.b, Plaintiff lodged a proposed pretrial order with

3 chambers.  The parties disagree whether certain issues of law remain to be litigated at trial, and

4 thus whether such issues should remain listed in the final pretrial order.  Also, the Court raised the

5 issue of whether a witness from Defendant's witness list, Paul Zimmer, should be stricken from

6 the final pretrial order.  The Court addresses each in turn.

7        **(A)  Issues of Law**

8              *(1)  Issues of Law Identified by the Court*

9        In its tentative ruling issued prior to the Conference, the Court stated its intent to modify

10 the parties' proposed pretrial order by striking issues of law numbers 1, 4, 9, 10, 14, 15, and 16

11 based on grounds that the issues have already been decided, or will be decided prior to the

12 issuance of the final pretrial order, or are not properly presented as issues of law.  [*See* Doc. No.

13 189 at 2-3.]  With the exception of Defendant's objection to issues of law numbers 9 and 10, the

14 parties did not object to striking the issues listed by the Court.

15        Issue of law number 9 states: "Whether and to what extent Plaintiff may introduce evidence

16 of a pattern and practice of discrimination on the part of the City[,] notwithstanding the fact that

17 City notes her pattern and practice theory is barred . . . ."  The Court has already determined

18 Plaintiff may introduce pattern and practice evidence.  [*See* Doc. No. 68.]  To the extent Defendant

19 inserted this issue of law to request the record reflect Plaintiff may introduce pattern and practice

20 evidence as opposed to a pattern and practice theory, the Court has acknowledged Defendant's

21 request.  *See supra*, p. 5 n.3.  Accordingly, issue of law number 9 will be stricken from the final

22 pretrial order.

23        Issue of law number 10 states in pertinent part: "[W]hether Plaintiff may introduce any

24 evidence of denial of training or testing occurring before August 16, 2005 (*i.e.*, the last 300 days

25 before she filed a federal employment claim – which is the only period for which she made a

26 jurisdictional administrative claim)."   Defendant objects to striking this issue of law because the

27 filing of an administrative claim remains as a jurisdictional issue.  Plaintiff contends this issue of

28 law relates to whether Plaintiff failed to exhaust her administrative remedies, which is an

1  affirmative defense, and the Court has already summarily adjudicated that Defendant is precluded

2  from raising affirmative defenses.

3        A failure to exhaust administrative remedies by failing to file a timely administrative claim

4  has been characterized as not jurisdictional, and may be raised as an affirmative defense to the

5  claim. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The filing of a sufficient

6  administrative claim that includes the matters forming the basis of a later judicial claim, and the

7  receipt of a right-to-sue letter, however, have been referred to as jurisdictional prerequisites to

8  maintaining a Title VII action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973)

9  (filing charges with the EEOC and receiving notice of the right to sue are jurisdictional

10  prerequisites to filing a suit in federal court).

11        Plaintiff filed a motion for partial summary judgment on each of Defendant's affirmative

12  defenses, including the defense that Plaintiff failed to exhaust administrative remedies.  Defendant

13  filed a late response indicating its non-opposition to the motion.  The Court granted Plaintiff's

14  motion for partial summary judgment.  [Doc. No. 30.]  Based on the record, however, these earlier

15  proceedings did not determine the jurisdictional scope of her Title VII claims.  Therefore, the

16  Court will not strike issue of law number 10 from the final pretrial order.

17        Accordingly, the Court will modify the pretrial order to strike issues of law numbers 1, 4,

18  9, 14, 15, and 16 from the final pretrial order.  Issue of law number 10 will not be stricken from the

19  final pretrial order.

20        *(2) Issues of Law Identified by the Parties*

21        At the conference, Plaintiff also requested the Court strike from the parties' proposed

22  pretrial order issues of law numbers 5, 6, 7, and 8 on grounds that the issues had already been

23  decided by the Court's April 21, 2008 Order.  [Doc. No. 68 ¶ 3.] Defendant objects to striking

24  issues 5 and 6 on grounds that the Court's April 21, 2008 Order did not completely preclude the

25  issues.

26        Issue of law number 5 states: "Whether and to what extent the Plaintiff may introduce any

27  testimony or evidence as to any alleged discrimination not described in her verified answers to

28  interrogatories which were never amended."  Issue of law number 6 states: "The scope of

1  testimony and evidence to be permitted in support of the single failure to promote claim which

2  Plaintiff described in her DFEH complaint, her EEOC complaint, the complaint she filed in state

3  court on June 20, 2006, and her verified answers to interrogatories."

4       A review of the record indicates the Court's April 21, 2008 Order precluded Defendant

5  from presenting evidence on these issues, "subject only to evidentiary determinations pursuant to

6  the provisions of Rules 402 and 403 of the Federal Rules of Evidence." [Id.]  Accordingly, issues

7  of law numbers 5 and 6 have already been decided, and any relevancy questions that may arise in

8  connection with these issues of law will be determined in accordance with Rules 402 and 403.

9  Therefore the Court will strike issues of law numbers 5,6,7, and 8 from the final pretrial order.

10       **(B) Whether Paul A. Zimmer Should be Stricken From the Pretrial Order**

11       On April 21, 2008, the Court granted Plaintiff's motion in limine to preclude Defendant

12  from presenting expert witness testimony from Paul A. Zimmer ("Zimmer") at trial.  [Doc. No.

13  68.]  On November 10, 2010, Defendant filed a motion to modify the interlocutory order

14  precluding defense expert Zimmer.  [Doc. No. 131.]  On February 28, 2011, the Court denied

15  Defendant's motion. [Doc. No. 181.]

16       In the proposed pretrial order, Defendant listed Zimmer in its witness list.  The Court

17  issued a tentative ruling prior to the Conference indicating the Court's intent to strike Zimmer

18  from the witness list. [Doc. Nos. 68 and 181.]  Defendant objects on grounds that the Court's prior

19  orders only precluded expert testimony, and Zimmer has valuable lay witness testimony because

20  the City intends for Zimmer to present a summary of data as permitted by Rule 1006.

21       Federal Rule of Evidence 1006 states:

22       The contents of voluminous writings, recordings, or photographs which cannot
     conveniently be examined in court may be presented in the form of a chart, summary,

23       or calculation. The originals, or duplicates, shall be made available for examination or
     copying, or both, by other parties at reasonable time and place. The court may order

24       that they be produced in court.

25  When a chart or summary of evidence "does not contain complicated calculations requiring the

26  need of an expert for accuracy, no special expertise is required in presenting the chart," and thus a

27  lay witness may establish the foundation for admission of the summary evidence under Rule 1006.

28  *U.S. v. Jennings*, 724 F.2d 436, 442 (5th Cir. 1984), *cert. denied*, 467 U.S. 1227; *see also U. S. v.*

1    *Scales*, 594 F.2d 558, 563 (6th Cir. 1979) *cert. denied*, 441 U.S. 946.  In contrast, a summary of

2    evidence may be deemed inadmissible if the summary would require an expert to authenticate it

3    and the witness who prepared and sought to present it was not qualified as an expert witness.  *See*

4    *U. S. v. Seelig*, 622 F.2d 207, 215 (6th Cir. 1980).

5         The Court's prior orders only preclude Zimmer from presenting expert testimony.  Thus, it

6    would be premature to strike Zimmer from Defendant's witness list if Zimmer is to present lay

7    witness testimony to establish the foundation for admitting summary evidence under Rule 1006.

8    The Court advises the parties that it finds the aforementioned guidelines under *Jenning*s and *Seelig*

9    pertinent when deciding whether summary evidence will ultimately be admissible under Rule

10   1006.  Accordingly, Paul Zimmer will not be stricken from Defendant's witness list.

11   **VI.  PLAINTIFF'S ORGANIZATIONAL CHART**

12        At the Conference, Defendant raised its concern that the Court committed error by denying

13   its motion in limine to preclude Plaintiff's proposed trial exhibit, a "Chart showing makeup of

14   lifeguard workforce by gender and rank."  Defendant contends the Court has placed a burden upon

15   the defense to prove its innocence because "the chart imposes a quota on the City."  Defendant's

16   concern amounts to a request to reconsider the Court's prior ruling, and has not properly been

17   brought before the Court.  The Court's prior ruling denying Defendant's motion in limine to

18   exclude the chart remains the same. [Doc. No. 181.]  To the extent Defendant's concern rests on

19   the Court's prior written tentative ruling on the issue, (*see* Doc. No. 180 ("Defendant can present

20   evidence as to why the numerical disparities [as shown in the chart] may exist for reasons other

21   than discrimination"), the tentative ruling is not to be interpreted as finding the chart demonstrates

22   numerical disparities exist due to discrimination.  Rather, the Court clarifies that, just as Plaintiff

23   may present evidence explaining why she believes the numerical disparities exist in the lifeguard

24   workforce for reasons of discrimination, so too may Defendant present evidence explaining why it

25   believes the numerical disparities exist in the lifeguard workforce for legitimate,

26   nondiscriminatory reasons.

27   / / /

28

- 11 -                          06-CV-1459 MMA (CAB)

1    A final pretrial order shall issue forthwith in accordance with Federal Rule Civil Procedure

2  16(e), and this Court's order.

3    **IT IS SO ORDERED.**

4

5  DATED:  May 18, 2011

6                                                           Hon. Michael M. Anello
                                                           United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28