# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISON N. TERRY,<br><br>                      Plaintiff,<br><br>    vs.<br><br>CITY OF SAN DIEGO,<br><br>                      Defendant. | CASE NO. 06-cv-1459-MMA (CAB)<br><br>**ORDER:**<br><br>**RULING ON PLAINTIFF'S TITLE VII DISPARATE IMPACT CLAIM;**<br><br>**DENYING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**<br><br>[Doc. No. 286] |

This matter is before the Court on Plaintiff Alison Terry's post-trial motion for a permanent injunction against Defendant the City of San Diego. [Doc. No. 286.] Additionally, the Court shall issue its ruling on Plaintiff's Title VII disparate impact claim, which was tried to the Court as Plaintiff's other claims were tried to a jury. Having considered the parties' submissions and the oral arguments of counsel, for the reasons set forth below, the Court rules in favor of Plaintiff on her Title VII disparate impact claim and **DENIES** Plaintiff's motion for a permanent injunction as **MOOT**.

## BACKGROUND

Plaintiff Alison Terry worked for the City of San Diego's lifeguard service as a seasonal Lifeguard I from 1992 until she resigned on April 9, 2009. On June 20, 2006, Plaintiff filed this employment discrimination action against Defendant the City of San Diego alleging that the City's

lifeguard service discriminates against women, including Plaintiff, by denying them the opportunity for promotion and other employment opportunities. [*Compl.* Doc. No., ¶¶ 13-14.] Plaintiff alleged the City's employment practices constitute gender discrimination in violation of 42 U.S.C. section 2000e-2 ("Title VII") and California Government Code section 12940, ("FEHA") subdivision (a). [Doc. No. 1.] On April 24, 2008, Plaintiff amended her complaint to add claims of unlawful retaliation in violation of 42 U.S.C. section 2000e-3(a) and California Government Code section 12940, subdivision (h). [*First Amended Complaint ("FAC")*, Doc. No. 69, ¶ 25-56.]

Prior to trial, Defendant sought an *in limine* ruling precluding Plaintiff from presenting evidence of her state and federal disparate impact claims at trial. Defendant argued that Plaintiff lacked standing to bring these claims because she was not disadvantaged by the alleged discrimination. [Doc. No. 133.] Citing Plaintiff's resignation from the lifeguard service on April 9, 2009, Defendant further argued that she could not establish redressibility. [*Id.*] Defendant also sought to bifurcate the trial of Plaintiff's disparate impact claims from her retaliation and disparate treatment claims. Defendants postulated that trying the claims together would result in jury confusion, but also argued that Plaintiff had no right to a jury trial on her disparate impact claims. [Doc. No. 130.] The Court heard argument on these issues at the pre-trial conference, and later the parties submitted supplemental briefing on whether Plaintiff's disparate impact claims were moot. [Doc. Nos. 184 and 187.] In her mootness brief, Plaintiff clarified that her disparate impact claims specifically challenged two of the City's practices: (1) the City's use of employee performance reviews ("EPRs") in the promotional process and (2) the subjective Lifeguard II promotional process. [Doc. No. 184, pp. 3-6.] Plaintiff argued that her disparate impact claims were not moot because if she prevailed, she could recover back pay, front pay, and injunctive relief. [*Id.*, p. 3.]

The Court ultimately denied Defendant's motion *in limine* to preclude Plaintiff from presenting evidence of her disparate impact claims. [Doc. No. 193, p. 4-6.] The Court ruled that Plaintiff sufficiently established injury and redressibility to satisfy the constitutional standing requirements with respect to her FEHA and Title VII disparate impact claims. [Id. at 3-4.]

Although the Court denied Defendant's request to bifurcate the trial, the Court determined that a jury would decide the FEHA and Title VII disparate treatment claims and the FEHA disparate impact claim, and the Court would decide the Title VII disparate impact claim. [*Id*. at 5.] The Court further ruled that it would not make any factual findings on the Title VII disparate impact claim until the jury made its findings, and it would be bound by the jury's factual findings on overlapping issues. [*Id.* at 5-6.]

Additionally, Defendant moved *in limine* to preclude Plaintiff from claiming constructive discharge, arguing that Plaintiff failed to exhaust the claim and failed to amend her operative pleading to allege a constructive discharge claim. [*Def's Trial Brief*, Doc. No. 222, p. 3-5.] In response, Plaintiff argued that she was not required to exhaust or separately allege a constructive discharge claim – according to Plaintiff, the issue of constructive discharge directly impacted the amount of recoverable damages. [Doc. No. 235] After considering the parties' oral arguments and supplemental briefing on the issue, the Court ruled that constructive discharge is treated as a stand-alone claim in the Ninth Circuit, and thus is a claim that must be specifically alleged and properly exhausted. [Doc. No 241; Doc. No. 299 at p. 10; and Doc. No. 300 at p. 3.] The Court further ruled that since Plaintiff was precluded from alleging constructive discharge, she was not entitled to seek back pay on her Title VII claim after the date of her resignation. [Doc. No. 299, p. 10.] Nevertheless, the Court ruled that California law permits an award of post-resignation damages for violations of FEHA irrespective of whether a plaintiff claims constructive discharge. [Doc. No. 300 at p. 3.] As such, the Court did not preclude Plaintiff from presenting evidence to the jury of her post-resignation damages.

The issues of fact at trial were limited to: (1) whether the City discriminated against Terry in violation of 42 U.S.C. § 2000e-2; (2) whether the City retaliated against Terry in violation of 42 U.S.C. § 2000e-3(a) and Cal. Government Code § 12940, subdivision (h); (3) whether the City discriminated against Terry in violation of Cal. Government Code § 12940, subdivision (a); and (4) if so, what damages should be awarded to Terry. [*Pre-Trial Order*, Doc. No. 194, p. 3.]

A lengthy jury trial was held from October 26 to November 18, 2011. During the trial,

Plaintiff presented extensive evidence in support of her state and federal disparate impact clams. At the conclusion of the trial the jury was instructed that to establish her state law disparate impact claim, Plaintiff must prove "Defendant had an employment practice of utilizing employee performance reviews that had a disproportionate adverse effect on women, or Defendant's Lifeguard II promotional process in general had a disproportionate adverse effect on women." [*Jury Instructions*, Doc No. 278, p. 24.] The jury was also instructed "in determining economic damages on Plaintiff's state law claims, you should consider the reasonable value of past lost earnings [back pay] and future lost earnings [front pay]." [*Id*. at 29.]

On November 18, 2011, the jury returned a verdict for Plaintiff on her federal disparate treatment claim and her FEHA disparate treatment and disparate impact claims. [*Jury Verdict*, Doc. No. 282.] The jury awarded Plaintiff $0 in economic damages and $100,000 in non-economic damages with respect to those claims. [*Id.*] The jury found in favor of Defendant on the state and federal retaliation claims. [*Id.*]

After the jury returned its verdict, Plaintiff filed the pending motion for a permanent injunction. [Doc. No. 286.] Additionally, Plaintiff's Title VII disparate impact claim is now ripe for resolution by the Court. To assist the Court with this endeavor, the parties filed proposed findings of fact and conclusions of law. [Doc. Nos. 290, 291.]

**I. DISCUSSION**

**1)   Plaintiff's Federal Disparate Impact Claim**

The following discussion constitutes the Court's Findings of Fact and Conclusions of Law on liability and damages for Plaintiff's Title VII disparate impact claim pursuant to Federal Rule of Civil Procedure 52(a).

   *a)   Liability*

The jury found in favor of Plaintiff with respect to her FEHA disparate impact claim. In this case, the factual issues relevant to the jury's decision on the FEHA disparate impact claim are identical to the issues relevant to the Court's determination of the Title VII disparate impact claim. Specifically, the Court must determine whether Defendant's practice of utilizing employee

1  performance reviews and/or the Lifeguard II promotional process in general had a disproportionate
2  adverse effect on women.

3        The Ninth Circuit instructs that, "where an employee brings an equitable discrimination
4  claim . . . and a legal discrimination claim . . . against an employer based on the same facts, the
5  Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual
6  determinations in deciding the legal claim." *Miller v. Fairchild Indus., Inc.*, 885 F. 2d 498, 507
7  (9th Cir. 1989). The Seventh Amendment provides that, "no fact tried by a jury, shall be
8  otherwise reexamined in any Court of the United States, than according to the rules of the common
9  law."

10       Additionally, disparate impact claims under Title VII and the FEHA are analyzed under the
11 same rules. *King v. Stanislaus Consol. Fire Protection Dist.*, 985 F. Supp. 1228, 1231, 1234
12 (E.D.Cal. 1997) (citing *City and County of San Francisco v. Fair Employment and Housing*
13 *Commission*, 191 Cal. App. 3d 976 (1987); *see also Rodriguez v. Airborne Express*, 265 F.3d 890,
14 896 n.4 (9th Cir. 2001) (stating that courts "look to federal authority regarding Title VII and
15 similar civil rights statutes when interpreting analogous statutory provisions of FEHA.")

16       Here, because the federal and state discrimination claims are based on the same facts, the
17 jury's implicit factual determinations regarding liability are preclusive. The jury was instructed
18 that to establish her state law disparate impact claim, "Plaintiff must prove that Defendant had an
19 employment practice of utilizing employee performance reviews that had a disproportionate
20 adverse effect on women, or Defendant's Lifeguard II promotional process in general had a
21 disproportionate adverse effect on women." [Court's Instruction No. 23.] Therefore, implicit in
22 the jury's finding in favor of Plaintiff on her FEHA disparate impact claim is a finding that
23 Defendant's practice of using employee performance reviews and/or its promotional practices in
24 general had an adverse effect on women. Because the jury rendered a general verdict as to liability
25 only, the Court is not in a position to determine *which* policies or practices the jury found
26 discriminatory. If the Court were to make specific findings of fact based on its own interpretation
27 of the evidence, it would risk contradicting the jury's findings of fact. Accordingly, applying the
28

facts implicitly determined by the jury to Plaintiff's Title VII disparate impact claim, the Court finds that the City had an employment practice or promotional process that disparately impacted women applying for the Lifeguard II position in violation of Title VII.

  *b)*  *Damages*

Plaintiff seeks an award of back pay from June 1, 2006 (the date she would have been promoted to Lifeguard II in the absence of the City's discrimination) until April 9, 2009 (the date she resigned). [*Pltf's Proposed Findings of Fact*, Doc. No. 289, p. 2.] Plaintiff calculates that she lost $50,459 in pay and benefits during this period. [*Id.*] Plaintiff asserts that the jury's award of $100,000 in non-economic damages on her federal disparate treatment claim does not preclude the Court from awarding back pay because the jury's award was pursuant to 42 U.S.C. § 1981a, which is "in addition to" the award of back pay under Title VII. [*Id.* at p. 3] However, Defendant argues that Plaintiff is not entitled to back pay because the jury found she suffered no economic damages. [*Def's Oppo. to Pltf's Motion for Permanent Injunction*, Doc. No. 292, p. 3-4.]

Section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g), provides for both injunctive and affirmative relief, including the award of back pay, as appropriate.[1] Back pay is to be awarded in Title VII actions following a finding of discrimination, unless there is some compelling reason to do otherwise, provided the claimant has fulfilled her duty to mitigate damages. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975); *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978). The remedy of back pay in Title VII cases is an "equitable" remedy and is distinct from the compensatory damages available for intentional discrimination under the 1991 Act. *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 252-253 (U.S. 1994) (stating "the new compensatory damages provision of the 1991 Act is "in addition to," and does not replace or duplicate, the back pay remedy allowed under [Title VII]"). Indeed, to prevent double recovery,

---

[1] In relevant part, 42 U.S.C. § 2000e-5(g)(1) reads: "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. 42 U.S.C. § 2000e-5(g)(1).

1  the 1991 Act provides that compensatory damages "shall not include back pay, interest on back
2  pay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."
3  42 U.S.C. § 1981a(b)(2).  Furthermore, back pay under Title VII is an equitable remedy to be
4  decided by the Court, not tried to a jury.  *Lutz v. Glendale Union High Sch., Dist. No. 205*, 403
5  F.3d 1061, 1067-1070 (9th Cir. 2005).

6  Here, because Plaintiff prevails on her Title VII disparate impact claim, she is entitled to
7  the remedies available under 42 U.S.C. § 2000e-5(g), including back pay.  However, since
8  Plaintiff resigned, and did not claim constructive discharge, Plaintiff is not entitled to back pay
9  after the date she resigned.  See *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1495 (9th Cir. 1995)
10 (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1134 (9th Cir. 1986)) ("An employee who
11 has been discriminatorily denied an opportunity for a promotion ordinarily may not collect
12 backpay for periods beyond that employee's voluntary resignation unless the employee
13 demonstrates that she was constructively discharged by the employer.") (internal citations
14 omitted); *but see Satterwhite v. Smith*, 744 F.2d 1380, 1381 n. 1 (9th Cir. 1984) (citing *Muller v.*
15 *United States Steel Corp.*, 509 F.2d 923, 930 (10th Cir.), cert. denied, 423 U.S. 825, 46 L. Ed. 2d
16 41, 96 S. Ct. 39 (1975)) (stating an employee who quits is not entitled to receive *any* back pay
17 unless his employer constructively discharged him) (emphasis added).

18 At trial, Plaintiff sought to recover back pay on her FEHA discrimination claims and
19 presented evidence of such damages to the jury.  To determine Plaintiff's economic damages on
20 her state law claims, the jury was instructed to "consider the reasonable value of past lost earnings
21 and future lost earnings." [*Jury Instructions*, Doc No. 278, p. 29]  The Court also instructed the
22 jury "to recover damages for past lost earnings, Plaintiff must *prove* the amount of the income,
23 earnings, salary, wages, or benefits that she has lost to date." [*Id.*] (*Emphasis added.*)  The jury
24 awarded Plaintiff $0 in economic damages on her FEHA disparate treatment and disparate impact
25 claims. [*Jury Verdict*, Doc. No. 282.]  Implicit in this award, is the factual finding that Plaintiff
26 did not suffer any economic damage as a result of the City's discrimination.  As discussed *supra*,
27 in deciding an equitable discrimination claim, the Court is bound by the jury's factual findings on
28

1  the legal claim. *Miller*, 885 F. 2d at 507.  The jury considered the evidence and determined the

2  "reasonable value" of Plaintiff's past lost earnings, i.e. back pay, to be zero.  The Court is bound

3  by this finding.  The Ninth Circuit has made clear that nominal damages are appropriate in cases in

4  which the violation of a constitutional right does not produce any actual damages.  See *Bernhardt*

5  *v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002).  Therefore, although Plaintiff is

6  entitled to back pay on her Title VII disparate impact claim, the amount of back pay awarded

7  should be nominal in order to be consistent with the jury's factual findings.

8        Accordingly, the Court rules in favor of Plaintiff on her Title VII disparate impact claim

9  and awards her $1 in backpay.

10 **2)**      **Plaintiff's Motion for Permanent Injunction**

11       In addition to damages, Plaintiff seeks injunctive relief.  Plaintiff moves to enjoin the City

12 from using its discriminatory hiring policies in the future, pursuant to 42 U.S.C. § 2000e-5(g).

13 [Doc. No. 286.]  For example, Plaintiff seeks to enjoin the City from using employee performance

14 reviews ("EPRs") in the process of hiring Lifeguard IIs; to require the City to provide reasonable

15 written notice to all Lifeguard Is of all criteria used in the process of hiring Lifeguard IIs; and to

16 prohibit the City from using unpublished criteria in the hiring process.  [*Id*.]  In opposition to the

17 motion, Defendant argues, *inter alia*, that Plaintiff no longer has standing to seek injunctive relief

18 because she resigned from her position with the City.  [Doc. No. 292, p. 2-3.]

19       Article III, § 2, of the Constitution confines federal courts to the decision of "cases" or

20 "controversies."  Standing to sue or defend is an aspect of the case or controversy requirement.

21 *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656,

22 663-664 (1993).  "To qualify as a case fit for federal-court adjudication, an actual controversy

23 must be extant at all stages of review, not merely at the time the complaint is filed.  *Arizonans for*

24 *Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401

25 (1975) (internal quotation marks omitted).  "There is no longer the requisite "case or controversy"

26 when the legal question before the Court has been mooted by events subsequent to the initial filing

27 of the complaint."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, reh'g denied, 300 U.S. 687

28

(1937). Mootness occurs when a party lacks a legally cognizable interest in the outcome of the litigation. *Powell v. McCormack*, 395 U.S. 486 (1969); *Headwaters, Inc. v. Bureau of Land Management*, 893 F.2d 1012, 1015 (9th Cir. 1989).[2] Generally, victims of employment discrimination are entitled to an injunction against future discrimination, unless the employer proves it is unlikely to repeat the practice. *EEOC v. Goodyear Aerospace*, 813 F.2d 1539, 1544 (9th Cir. 1987). However, a claim for injunctive relief becomes moot when the plaintiff can no longer benefit from the injunctive remedy sought. *Doe v. Attorney General of the United States*, 941 F.2d 780 (9th Cir. 1991).

Supreme Court and Ninth Circuit precedent support Defendant's contention that Plaintiff's resignation rendered her request for injunctive relief moot. For example, in *Doe v. Attorney General of the United States*, a physician with AIDS sued the FBI because, after receiving unconfirmed information that the doctor had AIDS, the FBI stopped sending its agents to the physician for routine physicals. 941 F.2d at 783-84. The physician plaintiff sought an injunction requiring the FBI to send its agents to his clinic, but before the doctor's case reached the Ninth Circuit, he resigned. *Id.* The Ninth Circuit held that the physician's claim for injunctive relief was moot because he could no longer benefit from the injunctive relief he sought. *Id.* at 784. More recently, in *Walsh v. Nev. Dep't of Human Res.,* the Ninth Circuit held that a former employee of the Nevada Department of Human Resources did not have standing to seek injunctive relief on her discrimination claims because she was no longer employed by the Department. 471 F.3d 1033, 1037 (9th Cir. 2006).[3]

///

---

[2] Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L. J. 1363, 1384 (1973)).

[3] Although there is Ninth Circuit case law indicating that a non-employee may have standing to sue for injunctive relief against an employer, those non-employees were in the process of seeking reinstatement to their former positions, or seeking work from that employer. *Walsh,* 471 F.3d at 1037 (citing *Freitag v. Ayers*, 463 F.3d 838, 2006 WL 3110975 (9th Cir. 2006); *Nanty v. Barrows Co.*,660 F.2d 1327 (9th Cir. 1981)). Here, Plaintiff seeks neither.

1  Finally, in *Arizonans for Official English v. Arizona,* the Supreme Court held that although a state employee had standing to sue when she filed the case, her claim for prospective relief was mooted when she resigned from her position. 520 U.S. at 72. In that case, the plaintiff challenged a provision of the Arizona Constitution declaring English as Arizona's official language and requiring the state to act in English only. *Id.* at 48-50. When the plaintiff filed her complaint, she was an Arizona government employee and regularly spoke Spanish when her job required her to speak to persons who only spoke Spanish. *Id.* at 50. The district court declared the provision unconstitutional and the decision was appealed to the Ninth Circuit. *Id.* at 55-56. During the pendency of the appeal, however, the plaintiff voluntarily resigned from her government position to accept another job. *Id.* at 59-60. The Ninth Circuit considered and rejected the suggestion that the case became moot when the plaintiff resigned her position. *Id.* at 60. The Supreme Court disagreed, holding that the plaintiff's departure for a position in the private sector "made her claim for prospective relief moot." *Id.* at 48. The Supreme Court reasoned that since the Plaintiff brought suit as an individual, and never sought designation as a class representative, she no longer had standing to seek prospective relief and therefore the Ninth Circuit did not have jurisdiction to decide the appeal. *Id*. at 48-50.

The facts of this case are strikingly similar to those in *Arizonans for Official English*. Here, Plaintiff was employed by the City of San Diego when she filed her complaint seeking, among other things, injunctive relief. After Plaintiff filed her complaint, she voluntarily resigned from her Lifeguard I position, and thus no longer sought promotion to Lifeguard II. Plaintiff ultimately prevailed on her discrimination claims against the City and now seeks to enjoin the City from future discrimination in its promotional hiring process. However, since Plaintiff does not seek reinstatement to her Lifeguard I position, she would not benefit personally from the anti-discrimination policies she requests. For example, enjoining the City from using EPRs in the hiring process for Lifeguard IIs will have no impact on Plaintiff because she is no longer employed by the City and has no intention of returning. Furthermore, like the plaintiff in *Arizonans for Official English*, Plaintiff brings this claim as an individual and has never sought certification of a

class action. Plaintiff's request for injunctive relief became moot when she resigned her position because she could no longer benefit from the injunctive remedy she sought. *See Doe v. Attorney General of the United States*, 941 F.2d 780 (9th Cir. 1991).

Accordingly, the Court **DENIES** Plaintiff's motion for a permanent injunction as **MOOT**.

**IT IS SO ORDERED.**

DATED: January 24, 2012

Hon. Michael M. Anello
United States District Judge